IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WALTER V. RODENHURST, III,　　)　CIV. NO. 08-00396 SOM-LEK
# A0137543,　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　)　ORDER DISMISSING THE STATE OF
　　　　　　　　　　　　　　　　)　HAWAII AND DENYING DEFENDANTS'
　　　　　vs.　　　　　　　　　　)　MOTION TO DISMISS FOR FAILURE
　　　　　　　　　　　　　　　　)　TO EXHAUST ADMINISTRATIVE
STATE OF HAWAII, KAY BAUMAN, )　REMEDIES
M.D., KENNETH ZIENKIEWICZ,　　)
M.D., FRANK J. LOPEZ, CLAYTON )
FRANK, WESLEY MUN, DORIS　　　)
ROBINSON, R.D., NOLAN UEHARA, )
ERIC TANAKA, NATHALIE KODAMA, )
DAVID SALDANA, M.D., CARMILLO )
SANTIAGO, MARY TUMMENILLO,　　)
JOHN IOANE, HOWARD KOMORI,　　)
BURT SANTIAGO, JUNE TAVARES, )
SHARI KIMOTO, DAREN SWENSON, )
JODY BRADLEY, BEN GRIEGO, LEE )
ANN ARCHULETA, V. VANTEL,　　　)
JOHN KEESLING, GIANG PHAN,　　)
LANE BLAIR, ANASTACIO PEREZ, )
PHYLLIS HANSEN, R.N., DIANNE　)
PIERSON, DIANE DUFFY, R.N.,　　)
PATRICIA SELLS, R.N.,　　　　　)
MUHAMMED HALEEM, M.D., TODD　　)
THOMAS, CORRECTIONS　　　　　　)
CORPORATION OF AMERICA,　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　)
_____)

## ORDER DISMISSING THE STATE OF HAWAII AND DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

　　　　　Walter V. Rodenhurst, III, is a State of Hawaii

prisoner proceeding pro se.  His 42 U.S.C. § 1983 action alleges

that Defendants failed to adequately address his various medical

needs and denied him access to the courts.  (See Compl.)  Certain

Defendants move to dismiss his Complaint on the sole ground that

he failed to comply with the exhaustion requirement of the

Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).[1]
On July 13, 2009, the court held a hearing on the Motion.[2]  After
reviewing supporting, opposing, and supplemental memoranda, and
upon consideration of the arguments made at the hearing, the
court *sua sponte* DISMISSES the State of Hawaii, DISMISSES damage
claims against individual Hawaii Defendants sued in their
official capacities, and DENIES the Motion to Dismiss.

## I.    BACKGROUND

In November 2002, Rodenhurst was a presentence detainee
in the custody of the Department of Public Safety, State of

---

[1]The Motion to Dismiss for Failure to Comply with the
Prisoner Litigation Reform Act was filed by Defendants
Corrections Corporation of America ("CCA"), John Keesling,
Muhammed Haleem, M.D., Todd Thomas, Jody Bradley, Daren Swenson,
Ben Griego, Patricia Sells, R.N., Anastacio Perez, Diane Duffy,
R.N., Phyllis Hansen, R.N., Diann Pierson, and Lang Blair, in
their individual and official capacities (collectively "CCA
Defendants").  (Doc. No. 200.)  On July 6, 2009, CCA Defendants
Leeann Archuleta and Gian Phan, M.D., filed their Answer and
joined in the CCA Defendants' Motion to Dismiss.  (Doc. Nos. 223,
225.)  Defendants State of Hawaii, Kay Bauman, M.D., Kenneth
Zienkiewicz, M.D., Frank J. Lopez, Clayton Frank, Wesley Mun,
Doris Robinson, R.D., Nolan Uehara, Erik Tanaka, Nathalie Kodama,
David Saldana, M.D., Carmillo Santiago, Mary Tummenillo, John
Ioane, Howard Komori, Burt Santiago, June Tavares, and Shari
Kimoto, in their individual and official capacities (collectively
referred to as "Hawaii Defendants"), joined in CCA Defendants'
Motion to Dismiss.  (Doc. No. 216.)  The court notes that the
Hawaii Defendants joined in CCA Defendants' Motion to Dismiss,
but the Motion only addresses exhaustion of administrative
remedies applying to the claims asserted against CCA Defendants.
The court is thus left without any specific exhaustion arguments
by the Hawaii Defendants regarding the claims against them.

[2]At the hearing, the court *sua sponte* raised potential
statute of limitations issues regarding Rodenhurst's claims
against the Hawaii Defendants and suggested that future briefing
on this issue may be appropriate.

Hawaii, temporarily housed at the Federal Detention Center
("FDC") in Honolulu, Hawaii.  (Comp. ¶¶ 29, 30.)  On December 4,
2002, he was transferred from FDC to the Oahu Community
Correctional Center ("OCCC") in Honolulu, Hawaii.  (Id. ¶ 34.)
In August 2003, Rodenhurst was transferred to Halawa Correctional
Facility ("HCF") in Aiea, Hawaii.  (Id. ¶ 57.)  In April 2006,
Rodenhurst was transferred to Diamondback Correctional Facility
("DCF") in Watonga, Oklahoma, until his transfer in August 2007,
to Saguaro Correctional Center ("SCC") in Eloy, Arizona.  (Id.
¶¶ 88, 111.)  The State of Hawaii houses some inmates at DCF and
SCC pursuant to contracts it has with CCA. Rodenhurst is
currently incarcerated at SCC.

     Rodenhurst brought this prisoner civil rights action
pursuant to 42 U.S.C. § 1983.  He is proceeding *in forma
pauperis*.  (Doc. No. 4.)  The gravamen of the Complaint is that
Defendants violated Rodenhurst's Eighth Amendment rights when
they failed to provide him with adequate medical care between
November 2002 and the present.  (See Compl.)  Specifically,
Rodenhurst claims that Defendants (1) failed to provide him with
his prescribed therapeutic diet, (2) failed to satisfy his
medication needs, (3) failed to provide medical treatment, (4)
failed to permit him to travel to Hawaii to see a doctor of his
choice, (5) failed to house him with Inmate Kamaka Villegas, who
allegedly assisted Rodenhurst in meeting his medical needs, and
(6) denied him access to the courts.  (Id.)  Rodenhurst also

raises state law negligence claims.  (<u>Id.</u>)  He seeks monetary damages and injunctive relief.  (<u>Id.</u>)

## II.  <u>DISCUSSION</u>

### A.  <u>Failure to State A Claim</u>

Rodenhurst names the State of Hawaii as a Defendant. Rodenhurst's claims against the State of Hawaii fail to state a claim upon which relief may be granted.  States are not persons for purposes of § 1983.  <u>See</u> <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 69 (1997); <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under [42 U.S.C.] § 1983."); <u>Doe v. Lawrence Livermore Nat'l Lab.</u>, 131 F.3d 836, 839 (9th Cir. 1997).

In addition, the Eleventh Amendment bars a person from suing a state in federal court without the state's consent.  <u>See</u> <u>Seminole Tribe of Fla. v. Fla.</u>, 517 U.S. 44, 72 (1996); <u>Natural Res. Def. Council v. Cal. Dep't of Trans.</u>, 96 F.3d 420, 421 (9th Cir. 1996).  Eleventh Amendment immunity extends to state agencies.  <u>Pennhurst State Sch. & Hosp. v. Holdeman</u>, 465 U.S. 89, 101-102 (1984).  Eleventh Amendment immunity is not automatically waived in actions brought under 42 U.S.C. § 1983.  <u>Quern v. Jordan</u>, 440 U.S. 332 (1979).  Hawaii has not waived the protection of the Eleventh Amendment.  <u>Office of Hawaiian Affairs v. Department of Educ.</u>, 951 F. Supp. 1484, 1492 (D. Haw. 1996) (§ 1983 does not abrogate state immunity under the Eleventh

4

Amendment ).  Rodenhurst's claims against the State of Hawaii
both fail to state a claim as a matter of law and are barred by
the Eleventh Amendment.  Accordingly, the State of Hawaii is
DISMISSED from the action.

Damage actions against state officials sued in their
official capacities are not cognizable under
§ 1983 either.  Will, 491 U.S. at 71.  Such actions are similarly
barred by the Eleventh Amendment.  Id.  This court therefore
dismisses damage claims against the individual Hawaii Defendants
to the extent they are sued in their official capacities, leaving
for future adjudication damage claims asserted against them in
their individual capacities.

What is not clear to the court is whether Rodenhurst's
official-capacity claims against the Hawaii Defendants seek
prospective injunctive relief.  Such relief sought from Hawaii
Defendants in their official capacities is not barred.  See
Lawrence Livermore, 131 F.3d at 839.  The Complaint is unclear as
to whether Rodenhurst's official-capacity claims against the
individual Hawaii Defendants involve only their actions during
his incarceration in Hawaii or also involve their alleged
oversight of Hawaii prisoners housed at DCF and DCF.  Unable to
decipher this issue on the present record, the court rules that,
to the extent the official-capacity claims against the Hawaii
Defendants include claims for prospective injunctive relief,
those claims remain in issue.  The court invites Hawaii

Defendants to clarify the matter through interrogatories or other discovery methods.

**B.    Exhaustion of Administrative Remedies**

      *1.   Legal Standard*

      The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Although district courts at one time had discretion to permit a case to proceed without exhaustion, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory.  Woodford v. Ngo, 548 U.S. 81, 85 (2006).

      Exhaustion is a prerequisite to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  Porter v. Nussle, 534 U.S. 516, 532 (2002); see also McKinney v. Carey, 311 F.3d 1198, 1199-1200 (9th Cir. 2002) (per curiam).  All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  McKinney, 311 F.3d at 1199 (citation omitted).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is still a prerequisite to bringing suit.  Id.  See Booth v. Churner, 532 U.S. 731, 741 (2001).

The grievance process must be completed before the inmate files suit; exhaustion during the pendency of the litigation will not save an action from dismissal.  McKinney, 311 F.3d at 1200.  Because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal.  Woodford, 548 U.S. at 90.

A prisoner's failure to exhaust is an affirmative defense, which a defendant has the burden of both raising and proving.  Jones v. Bock, 549 U.S. 199 (2007); see Brown v. Valoff, 422 F.3d 926 (9th Cir. 2004); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) ("§ 1997e(a) creates a defense- -defendants have the burden of raising and proving the absence of exhaustion").  Failure to exhaust should be raised in an unenumerated Rule 12(b) motion rather than in a motion for summary judgment.  Wyatt, 315 F.3d at 1119.  In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact.[3]  Id. at 1119-20.  If the court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without prejudice.  Id. at 1120.

_____

[3]If the court looks beyond the pleadings in deciding a motion to dismiss for failure to exhaust, the court must give the prisoner fair notice of his opportunity to develop a record. Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14.  On May 13, 2009, Rodenhurst was given fair notice of his opportunity to develop a record. (See Doc. Nos. 202, 203.)

Defendants argue that Rodenhurst's Complaint should be dismissed because he did not complete the grievance processes concerning his respective claims, as required by DCF and SCC regulations.  Rodenhurst counters that he did complete the processes as he understood them and/or that he should be excused from exhaustion because his attempts were thwarted by prison officials.  Specifically, Rodenhurst alleges that SCC officials threatened to punish him for filing grievances.  (Compl. ¶¶ 118, 131-132, 142.)  The court first addresses the exhaustion of relevant grievances submitted by Rodenhurst while he was incarcerated at DCF, then turns to the grievances submitted by Rodenhurst while he was incarcerated at SCC.

### 2.  *Exhaustion Of Grievances While Incarcerated At DCF*

Defendants argue that all of Rodenhurst's claims involving DCF, namely, its alleged failure to properly distribute his medication and adhere to his medically prescribed diet, should be dismissed for failure to exhaust administrative remedies.  Rodenhurst argues that he exhausted his administrative remedies as he understood them.

While Rodenhurst's claim regarding the distribution of his medication may well be time-barred, the present motion argues only a failure to exhaust.  With respect to both the medication and the diet claims, Defendants do not meet their burden of establishing a failure to exhaust.

8

According to Tresa Boline, the Grievance Officer for DCF, "the administrative remedies available at DbCF during the relevant time period contained three steps, one of which was informal and two of which were formal." (CCA Defs' Mot. to Dismiss, Ex. 1, Tresa Boline Aff. ¶ 7.)  For the first step, which is considered an attempt at informal resolution, a prisoner submits "a Request to Staff on Form OP-090124D.  These forms [are] to be submitted within seven (7) days of when a concern arose and normally [will] be answered within ten (10) working days."  (Id., Ex. 1 ¶ 8.)

A prisoner who is unsatisfied or does not receive a timely response regarding a Request to Staff may take the second step of "fil[ing] a Formal Grievance on Form 14-5A within seven (7) calendar days of receipt of the response to Request to Staff or after allowing the normal time period for a response (ten working days) and not receiving a response."  (Id., Ex. 1 ¶ 9.) Prisoners are required to document their efforts to informally resolve the matter.  (Id.)  They must attach "a copy of their Request to Staff and submit their grievance via the internal facility mail addressed to 'Facility Grievance Officer.'"  (Id.) "Upon receipt of the 14-5A form, the Facility Grievance Officer assigns a number to the grievance, conducts an investigation and responds to the grievance."  (Id., Ex. 1 ¶ 10.)

A prisoner unsatisfied with the response may move to the final step of the administrative process, which is an appeal

of the Grievance Officer's decision "by completing the appropriate section on Form 14-5A and returning it to the Grievance Officer within five (5) days of receipt of the Grievance Officer's decision." (<u>Id.</u>, Ex. 1 ¶ 11.)  "The Grievance Officer then logs the appeal and forwards the appeal to the Warden or his designee for final resolution.  The Warden or his designee renders a written decision on the appeal within fifteen (15) days, at which point the appeal is returned to the inmate." (<u>Id.</u>)  "The Warden/Administrator's decision is final, in all matters except those relating to the placement of Hawaiian Inmates at DbCF." (<u>Id.</u>)  A decision by the Warden or his or her designee to deny an appeal relating to a Hawaii prisoner's placement at DCF can be appealed to the Grievance Officer at HCF. (<u>Id.</u>)

Defendants assert that Rodenhurst failed to exhaust his administrative remedies regarding Formal Grievance No. 0606-2-110, which addresses the  distribution of his medication while he was at DCF. (CCA Defs.' Mot. to Dismiss, Att. C.)  Rodenhurst submitted that Formal Grievance on June 2, 2006. (<u>Id.</u>)  On June 12, 2006, after an investigation showing a delay in medication distribution, Rodenhurst's grievance was granted with the explanation that "[t]he medication was on order at the pharmacy.

10

As soon as it came in you were given the medication on 6/6/06."[4] (Id.)

As Rodenhurst's medication grievance was decided in his favor, it is difficult for this court to understand how he could be said to have failed to exhaust.  No further administrative action is required of an inmate who is successful in a grievance proceeding.  There may be other issues concerning the claim, but Defendants do not show that exhaustion is one of them.

The court turns now to Rodenhurst's claim concerning his medically prescribed diet.[5]  Rodenhurst filed numerous

---

[4]This grievance appears to fall outside the applicable statute of limitations.  The statute of limitation applicable to § 1983 actions in Hawaii is the two-year "general personal injury" provision  See Pele Def. Fund v. Paty, 73 Haw. 578, 597-98, 837 P.2d 1247, 1260 (1992); see Haw. Rev. Stat. § 657-7. Rodenhurst filed this action on September 3, 2008; therefore, his claims must have accrued on or prior to September 3, 2006, in order to comply with the two-year statute of limitations.  This grievance was concluded on June 12, 2006, making it appear that it is time-barred.  Rodenhurst does not allege any facts to suggest how or why Hawaii's two-year statute of limitations might be tolled for a period of time which would make his claim timely. However, as timeliness is not raised in the present motion, this court leaves this issue for future proceedings.

[5]Additionally, Rodenhurst submitted two Requests to Staff to DCF's Medical Unit that may be time-barred, as they appear to have been concluded in June 2006 and August 2006.  (See CCA Defs.' Mot. to Dismiss, Ex. 3, Att. C.)  There is a Medical Unit Request to Staff that was denied, and a letter from Rodenhurst to the Medical Unit, both of which are dated within the applicable statute of limitations time frame.  (Id., Ex. 3, Atts. C, D.) The court does not consider these documents because it is unclear what, if anything, transpired pertaining to the administrative remedy procedure at DCF.  (Id.)

[5]Rodenhurst also submitted a Request to Staff to DCF's Medical Unit seeking to be housed with Inmate Villegas.  It

Requests to Staff with DCF's Medical Unit regarding DCF's alleged failure to provide his medically prescribed diet. (See CCA Defs.' Mot. to Dismiss, Exs. 1, 3.) These Requests to Staff reveal that DCF was aware of the issue and was working on correcting it. (Id.)

On November 27, 2006, DCF received Formal Grievance No. 1106-19-214 on a Form 14-5A from Rodenhurst claiming that he was not receiving his medically prescribed diet. (CCA Defs.' Mot. to Dismiss, Ex. 1, Att. D.) The grievance was denied by Grievance Officer Boline on December 4, 2006, on the ground that Rodenhurst had failed to show that he had gone through the informal grievance process before submitting his formal grievance. (Id.)

Referring to Formal Grievance No. 1106-19-214, Rodenhurst again complained about DCF's alleged continual failure to adhere to his medically prescribed diet in Formal Grievance No. 0107-5-5 dated December 24, 2006. (Id., Ex. 1, Att. E.) On January 29, 2007, after an investigation, Grievance Officer Boline decided the grievance in Rodenhurst's favor, stating that "[t]he kitchen has been instructed to take the necessary steps to ensure your prescribed diet is followed."[6] (Id.)

---

appears that he was instructed to address the issue with personnel at SCC upon his arrival there. (CCA Defs.' Mot. to Dismiss, Ex. 3, Att. F; Pl's Resp. Defs.' Mot. to Dismiss, Ex. 1, Att. H.) There is no suggestion in the record that Rodenhurst pursued this issue further at DCF. (Id. p. 7, 23, Ex. 3.)

[6]The documents included in Attachment E reveal that Rodenhurst did not follow all of the steps or the time line set

Defendants do not show how Rodenhurst can be said to have failed to exhaust his administrative remedies when DCF agreed to provide the medically prescribed diet, and DCF responded favorably to the Requests to Staff he submitted to the Medical Unit.[7]  Indeed, at the hearing on July 13, 2009, CCA Defendants' counsel conceded that an inmate need not pursue further administrative remedies if a grievance has been granted.

Rodenhurst appears to be complaining that DCF did not do what it promised to do.  While it is true that an inmate may file a new grievance when he or she fails to receive the promised relief, at the July 13, 2009, hearing, CCA Defendants' counsel stated that there is no grievance appeal process specific to failures to implement relief that has been granted by DCF and SCC.  This court is concerned that reading general grievance rules as requiring a new grievance allows a prison to make it

_____

forth in DCF's grievance procedure, but his grievance was still granted. (CCA Defs.' Mot. to Dismiss, Ex. 1, Att. E.)  This was consistent with many other Rodenhurst grievances that did not fully comply with the prisons' grievance systems rules.  DCF and SCC nevertheless still proceeded with most of the grievances. Defendants thus waived their challenges to these grievances based on technical defects.  See Bradley v. Williams, No. 07-1870 HU, 2009 WL 198014, at *2 (D. Or. Jan. 23, 2009) ("[T]his court finds that defendants waived their right to reject plaintiff's grievance by responding to the defective grievance and to then respond to both appeals of the grievance.").

[7]While Rodenhurst's initial grievance (Grievance No. 1106-19-214) regarding his diet was denied for failure to follow the proper grievance procedure, his subsequent grievance concerning his diet was granted on January 29, 2007 (Grievance No. 0107-5-5).  (See CCA Defs.' Mot. to Dismiss, Ex. 1, Atts. D, E.)

13

impossible for an inmate to get to court.  A prison could continually agree to do things, fail to do them, review grievances, promise again, fail again, and require new grievances.  The exhaustion requirement was not intended to be a means of ensuring that a prisoner could never get to court.

While this court has no reason on the present record to think that DCF was deliberately stringing Rodenhurst along, the court can, at the very least, require Defendants to show that a continuous exhaustion requirement was actually in effect and communicated to Rodenhurst.  No such showing having been made, this court does not find a failure to exhaust with respect to this matter.  The court stresses that it is not ruling here that Rodenhurst had no obligation to file a new grievance asserting DCF's failure to do what it promised.  The court is instead ruling that CCA Defendants do not meet their burden of establishing that Rodenhurst was required to grieve again.

The Ninth Circuit has made it clear that "a prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." Brown, 422 F.3d at 935.  Accord Clement v. Cal. Dep't of Corr., 220 F. Supp. 2d 1098, 1106 (N.D. Cal. 2002) (concluding that the plaintiff adequately exhausted his administrative remedies when his two grievances were resolved in his favor while they were pending with the prison); Brady v.

14

<u>Attygala</u>, 196 F. Supp. 2d 1016, 1021 (C.D. Cal. 2002) ("When Brady's grievance was 'granted' at the second level of review, there was little else he could seek or expect from the prison administrative process; he had 'won' his appeal and had been granted all the relief he sought in his grievance."); <u>Gomez v. Winslow</u>, 177 F. Supp. 2d 977, 985 (N.D. Cal. 2001) ("Because [plaintiff] had, in essence, 'won' his inmate appeal, it would be unreasonable to expect him to appeal that victory before he is allowed to file suit."). Rodenhurst "won" his grievances concerning his medically prescribed diet and was told by DCF that corrective action was being administered. (CCA's Defs.' Mot. to Dismiss, Atts. C, D, E.)

Defendants' Motion to Dismiss for failure to exhaust administrative remedies pertaining to Rodenhurst's claims against DCF is DENIED.

### 3. *Exhaustion Of Grievances While Incarcerated At SCC*

Defendants argue that the claims involving SCC should be dismissed for failure to exhaust administrative remedies. Rodenhurst argues that he exhausted his administrative remedies as he understood them. He also asserts that he should be excused from the exhaustion requirement because threats by prison personnel, including the Warden, made the exhaustion process at SCC unavailable to him. The court concludes that Rodenhurst's assertions regarding threats, and his supporting affidavit providing specific instances and dates, are sufficient, at this

stage of the litigation, to avoid dismissal based on failure to exhaust administrative remedies.

Even without the threat issue, Defendants' exhaustion arguments fail with respect to claims regarding SCC's alleged failure to properly dispense medication, to give the correct medication, to provide Rodenhurst's medically prescribed diet, to follow his medical treatment plan, and to permit him to be housed with Inmate Villegas, who allegedly helped Rodenhurst meet his medical needs.

### a. *Availability of Administrative Remedies*

Prison officials who have made administrative remedies unavailable may not then assert a prisoner's failure to exhaust those remedies. See Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (reversing the district court's dismissal of a case for failure to properly appeal when the appeals process was unavailable to the plaintiff); Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008) (discussing whether the PLRA exhaustion requirement applies when administrative procedures are unavailable and when prison officials obstruct a prisoner's attempt to exhaust).

Other circuits have also considered this matter. See Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (stating that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it"); Aquilar-Avellaveda v.

16

Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007) (courts are "obligated to ensure any defects in exhaustion were not procured from the action or inaction of prison officials"); Hemphill v. State of New York, 380 F.3d 680, 688-89 (2d Cir. 2004) (there are "some circumstances [that] may render seemingly accessible remedies, in fact, unavailable"); Brown v. Croak, 312 F.3d 109, 111-12 (3d Cir. 2002) (a grievance process was unavailable when a prisoner was instructed to wait until the conclusion of an investigation and then was not informed when it was concluded); Lyon v. Vande Krol, 305 F.3d 806, 808 (8th Cir. 2002) ("It is true that we have held that inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies."). See also Smith v. Davis, No. 07-01632 AWI-GSA, 2008 WL 4532477, at *2 (E.D. Cal. Oct. 8, 2008) (listing circuit cases).

Rodenhurst alleges that he had a meeting on September 6, 2007, with "Defendants Archuleta, Keesling and Vantel during which Plaintiff was threatened and/or intimidated by said administrative personnel on behalf of the Warden, concerning the Plaintiff's request for appropriate periodically prescribed treatment regimen." (Compl. ¶¶ 117, 118.) Rodenhurst also states that "Defendants Archuleta, Vantel, Keesling and Bradley and Swenson were aware of what they were doing and conspired to discourage Plaintiff by threat of punitive action from pursuing

17

Plaintiff's concerns that his prescribed medical treatment program was not being complied with." (<u>Id.</u> ¶ 118.)

Additionally, Rodenhurst alleges that "[o]n October 30, 2007, [I] was harassed at dinner by Defendant Archuleta regarding the housing issue and on November 7, 2007, I was threatened by Warden Swensen [sic] regarding issues of housing, medication, and treatment in a meeting he called in J-Unit with me." (Pl.'s Resp. Defs.' Mot. to Dismiss, Ex. 1, Walter V. Rodenhurst III Aff. ¶ 17.) Allegedly presenting "an accurate verbatim recitation," Rodenhurst states that Warden Swenson said, "I will send you to segregation if one more item crosses my desk regarding your name." (<u>Id.</u>, Ex. 1, Walter V. Rodenhurst III Aff. ¶ 40.)

In his Complaint, Rodenhurst alleges that "the Administration personnel at SCC did intimidate, threaten and coerce Plaintiff with threats of harm and in reliance thereupon Plaintiff felt forced to curtail Plaintiff's actions to report medical issues to the appropriate personnel for fear of reprisals against Plaintiff and Inmate Villegas." (Compl. ¶ 131.)

Warden Swenson denies these allegations. (Pl.'s Resp. Defs.' Mot. to Dismiss, Ex. Z, Warden Daren Swenson Aff. ¶ 3.) Indeed, Rodenhurst himself submits a declaration from Warden Swenson stating, "At no time during the time period that I was assigned as Warden of the Saguaro Correctional Center . . . did I ever verbally threaten Inmate Walter Rodenhurst with disciplinary

18

action for submitting Sick Call Requests, Inmate Request Forms or
formal grievances/complaints relating to his purported medical
diet needs, purported diagnosis of pancreatitis, or alleged
medical need to be housed with a particular inmate." (Pl.'s
Resp. Defs.' Mot. to Dismiss, Ex. Z, Warden Daren Swenson Aff.
¶ 3.)

Accepting as true Rodenhurst's allegations in the
Complaint and in his affidavit, this court concludes that there
is a dispute over whether administrative remedies at SCC were
rendered unavailable. Rodenhurst's allegation that he was
threatened with punishment if he availed himself of the
administrative remedies procedure precludes the granting of the
present motion asserting a failure to exhaust.

CCA Defendants note that Rodenhurst filed grievances
after being allegedly threatened. (See CCA Defs' Mot. to
Dismiss.) However, Rodenhurst's filing of grievances after
allegedly being threatened is not dispositive of whether threats
prevented other submissions.

The different versions of events pivotal to the
exhaustion issue can only be reconciled by determining the
credibility of the parties. This cannot be accomplished on this
motion to dismiss. See Roberts v. Salano, No. 08-00162 LJO-GSA,
2009 WL 1514440, at *2 (E.D. Cal. May 27, 2009) ("While the Court
may resolve disputed issues of fact on an unenumerated 12(b)
motion, . . . it cannot assess the credibility of the parties'

differing versions of what occurred."); <u>Barretto v. Smith</u>, No. 07-1544 FCD-DAD, 2009 WL 1271984, at *7 (E.D. Cal. Mar. 6, 2009) ("Under these circumstances, in which the parties offer competing declarations setting forth differing versions of events, the court cannot make the necessary credibility determination to resolve the exhaustion issue on a motion to dismiss."). Consequently, Defendants' Motion to Dismiss regarding the claims asserted against SCC is denied without prejudice.

Rodenhurst also argues that he was forestalled from availing himself of SCC's administrative remedies because appropriate grievance forms were unavailable during the initial period after his transfer.  (Pl.'s Resp. Defs.' Mot. to Dismiss, Ex. 1, Walter V. Rodenhurst, III Aff. ¶¶ 29-32.)  The court need not address this argument as it denies Defendants' Motion to Dismiss on other grounds.

### b.  *Exhaustion of Administrative Remedies on the Merits*

Even without the threat issue, CCA Defendants do not establish a failure to exhaust administrative remedies at SCC with respect to SCC's alleged failure to properly dispense medication, to give the correct medication, to provide Rodenhurst's medically prescribed diet, to follow his medical treatment plan, and to house him with Inmate Villegas for alleged medical reasons.

At SCC, "[t]he administrative remedies . . . contain four steps, two of which [are] formal and two of which are

informal." (CCA Defs.' Mot. to Dismiss, Ex. 2 ¶ 10.)  Before filing a formal grievance, a prisoner is required to attempt to informally resolve problems. (Id., Ex. 2 ¶ 11.)  The first step requires a prisoner to submit a "Request for Service" through the Unit Management Team. (Id.)  "A similar 'Medical Request Form' is utilized as an initial request for medical concerns." (Id.)

        If the prisoner is unsatisfied with the result, "the next step is to attempt to resolve the issue by filling out a Form 14-5A, the Informal Resolution form and attaching a copy of the initial Request for Service or Medical Request Form . . . within seven (7) calendar days of the date the inmate first becomes aware of the subject of the grievance." (Id., Ex. 2 ¶ 12.)  After receiving Form 14-5A, "the Facility Grievance Officer assigns the inmate's grievance to an appropriate staff member and [it is] assigned a number." (Id., Ex. 2 ¶ 13.)  "That staff member has seven (7) working days to investigate the case." (Id.)  The Grievance Officer has another eight (8) working days to return a decision[,] . . . [making] [t]he total time for the informal resolution process fifteen (15) days." (Id.)

        If the prisoner is unsatisfied with the outcome, he or she may file a formal grievance on Form 14-5B, Formal Grievance, "within five (5) calendar days of the unresolved Informal Resolution." (Id., Ex. 2 ¶ 14.)  A prisoner must attach Form 14-5A and the prison's response to his or her formal grievance form. (Id.)

After receiving Form 14-5B, the Facility Grievance Officer "assigns it a number . . . . and causes an investigation to be conducted and renders a decision on the grievance." (Id., Ex. 2 ¶ 15.) "A written explanation of the approval/disapproval or notice of extension of time is given to the inmate, in person, for signature within fifteen (15) calendar days of receipt of the formal grievance." (Id.) The prisoner receives a complete copy of the formal grievance and any attachments when the Grievance Officer's decision is rendered. (Id.)

If an inmate is dissatisfied, he or she may complete the appeal section on Form 14-5B and resubmit the grievance within five calendar days of receiving the response. (Id., Ex. 2 ¶ 16.) "After a grievance appeal is received and logged by the Facility Grievance Officer, it is forwarded to the Warden or his designee for review and a final response." (Id.) "The Warden or his designee has fifteen (15) working days to respond to a grievance appeal." (Id.) The response is documented on Form 14-5B and is given to the prisoner, in person, for signature, along with a complete copy of the appeal response and any corresponding attachment. (Id.) The decision by the Warden/Administrator is final. (Id.)

CCA Defendants do not show that Rodenhurst failed to exhaust his claims pertaining to SCC's alleged failure to properly distribute his medication, provide his medically prescribed diet, and follow his medical treatment plan. In an

22

Informal Resolution Form 14-5A dated June 6, 2008, Rodenhurst
complained that he had not received proper medication on time.
(Id., Ex. 2, Att. G.)  Rodenhurst also attached documents showing
his prior attempts to grieve the alleged failure to receive his
medication on time.  (Id.)  The "Informal Resolution Outcome" of
June 19, 2008, stated that the grievance was "RESOLVED pending
for 7 days."  (Id.)  Specifically, the SCC staff member
responding to the grievance stated that "[b]ased upon C/S Nichols
information - I/M Rodenhurst medication did not come in and was
not ordered - C/S Nichols will call in order on 6-19-8 should be
on order tonight - if not the following week.  I/M Rodenhurst can
grieve if in 7 day[s] the medication does not arrive."  (Id.)

　　　Through an Informal Request Form dated June 25, 2008,
Rodenhurst again informed SCC that he had not received his
medication on time.[8]  (Id., Ex. 2, Att. H.)  Rodenhurst received
a response from a SCC staff member dated June 26, 2008,
explaining that Rodenhurst received his medication on June 25,
2008, because the pharmacy servicing SCC did not have the
medication in stock and had to order it.  (Id.)

　　　Rodenhurst submitted an Inmate Request Form dated July
24, 2008, complaining again that he had not received his

---

[8]There is also an Inmate Request Form dated June 25, 2008,
that is part of sealed Exhibit 3, Attachment K, to CCA
Defendants' Motion to Dismiss.  Without disclosing the details of
that form, this court notes that it promised to inform Rodenhurst
when his request was satisfied.

medication.  (<u>Id.</u>, Ex. 2, Att. J.)  An SCC pharmacy staff member responded on July 25, 2008, informing Rodenhurst that "your medication is here.  Please come pick up."  (<u>Id.</u>)  However, according to a hand-written note on the bottom of the page initialed by Rodenhurst dated July 27, 2008, he "[w]ent to medical unit to pick up items as directed by CO.  Told they could not give it to me per policy - must go to noon pill pass M-F.  I am out of meds 4 day [sic]!"  (<u>Id.</u>)

        Continuing to complain about not receiving his prescribed medication, Rodenhurst submitted Informal Resolution No. 08-07-14 dated July 27, 2008, saying  that "[o]nce again medication is the issue."  (<u>Id.</u>, Ex. 2, Att. J.)  Rodenhurst specifically complained that he was not receiving his medication in a timely manner and the pharmacy had the incorrect medication. (<u>Id.</u>)  Defendant Patricia Sells, R.N., noted the informal resolution outcome as "UNRESOLVED" on August 4, 2008.  Defendant Sells informed Rodenhurst that she had "requested information from Hawaii & have set up a case review for Mr. Rodenhurst's case regarding the medication he wants for his pancreatic enzyme." (<u>Id.</u>)  Defendant Sells explained that Rodenhurst had received his refills on July 28, 2008, and that "[r]efill request[s] received more than 7 days in advance are not refilled.  This may have [led] to the issue.  It takes 3-5 business days for medication to arrive after it has been ordered.  Other than the pancreatic

enzyme - there are no further issues & should be none in the future." (<u>Id.</u>)

In Inmate Grievance No. 0042-08 dated August 5, 2008, Rodenhurst complained about the response regarding his Informal Grievance No. 08-07-14. (<u>Id.</u>, Ex. 2, Att. J.) Specifically, Rodenhurst stated: (1) he was diagnosed with pancreatic insufficiency and prescribed a brand-specific medication for that condition; (2) treatment for his pancreatic condition included a special therapeutic diet;[9] and (3) the procedure for any further treatment, test, or medication was to be determined in consultation with his private physician, Dr. Iwanuma in Hawaii, his primary care provider. (<u>Id.</u>) Along with other documentation showing Rodenhurst's attempts to address his issues, Rodenhurst attached the following documents to Grievance No. 0042-08: a copy of Informal Resolution No. 08-07-14; a copy of an Inmate Request Form dated July 24, 2008; and a copy of Informal Resolution No. 08-06-0008. (CCA Defs.' Mot. to Dismiss, Ex. 2 ¶ 32, Att. J.) Rodenhurst states, "Stop tampering with my treatment plan. Give me my meds as prescribed by Dr. Iwanuma and the full compliant diet that was prescribed by my team of doctors." (<u>Id.</u>)

Defendant Sells provided the following response dated August 7, 2008:

---

[9]Rodenhurst also states that "Dr. Phan told me there is no compliant diet so take regular plate and eat what you can and continue to cook for yourself what you buy at the commissary." (CCA Defs.' Mot. to Dismiss, Ex. 2, Att. J.)

> Dr. Haleem is the physician who decides the
> treatment plan for this facility.  You saw
> Dr. Haleem, you told him you needed to check
> with your attorney before giving us answers &
> we have yet to hear from you - without your
> active participation medical care cannot be
> adequately planned.  Our treatment plans have
> to be medically based & correlated to current
> medical findings.

(Id.)  Rodenhurst appealed, calling the response "unsatisfactory based on my history with your company."  (Id.)

Arguing that his medical history was a matter of record, Rodenhurst said that "Dr. Phan informed me that he had spoken to my doctor, Dr. Tad Iwanuma by phone and that he had the permission of CCA Corporate office and Hawaii to abide by the directions of Dr. Iwanuma as my primary care provider and to follow his direction for treatment."  (Id.)  Rodenhurst stated that, on August 4, 2008, he had spoken with Dr. Iwanuma, who informed him that he had made no changes to Rodenhurst's medication or treatment plan and had not heard from SCC regarding changes in Rodenhurst's health.  (Id.)  On August 12, 2008, the Assistant Warden sustained the denial of the grievance.  (Id.)

As previously explained by CCA Defendants, the decision by the Warden/Administrator was final and was the last step of the grievance procedure at SCC.  (CCA Defs.' Mot. to Dismiss, Ex. 2 ¶ 16.)  Consequently, the court is uncertain why CCA Defendants claim a failure to exhaust with respect to the issues raised by Rodenhurst in Inmate Grievance No. 0042-08, including all of the attachments to the grievance such as Informal Resolution No. 08-

07-14, Inmate Request Form dated July 24, 2008, and Informal Resolution No. 08-06-0008.  These issues included Rodenhurst's claims regarding SCC's alleged failure to properly dispense medication, to distribute the correct medication, to provide his medically prescribed diet, and to follow his medical treatment plan.  SCC was on notice of all of these issues while deciding the grievances on substantive, not procedural, grounds.

All of these allegations were encompassed within Rodenhurst's claim of inadequate medical care.  See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) ("The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."); Gomez, 177 F. Supp. 2d at 982 ("Rather than distinct causes of action, allegations that defendants failed to notify Gomez that he tested positive for hepatitis C antibodies, begin treatment for a matter of years, or provide him with adequate information are simply aspects of the inadequate medical treatment he notified corrections officials about in his administrative appeals.  The allegations are encompassed within Gomez's claim of inadequate medical care and do not require filing separate internal grievances.").  As a result, CCA Defendants' Motion to Dismiss these claims for failure to exhaust is denied even if the court puts aside the threat issue.

The court turns now to Rodenhurst's claim regarding SCC's alleged failure to house him with Inmate Villegas, who

27

supposedly assisted Rodenhurst with his medical needs.
Rodenhurst attempted to be housed with Inmate Villegas through
various Inmate Request Forms. (Pl.'s Opp'n to CCA Defs.' Mot. to
Dismiss, Att J.; Defs' Mot. to Dismiss, Ex. 3, Att. H.) The
Inmate Request Forms dated August 23, 2007, and August 29, 2007,
were denied by SCC staff members on August 28, 2007, and August
30, 2007, respectively.    (Pl.'s Opp'n to CCA Defs.' Mot. to
Dismiss, Att J.)  The reasons for the denials were "[b]ased on
both of your custody this will not happen," and "move has been
denied." (Id.)  By Informal Resolution No. 07-09-0004 dated
August 31, 2007, Rodenhurst again attempted to be housed with
Inmate Villegas, asserting medical necessity. (CCA Defs.' Mot.
to Dismiss, Ex. 2, Att. F.)

    After receiving Informal Resolution No. 07-09-0004, SCC
Facility Grievance Officer Juan Valenzuela consulted with both
the Clinical Supervisor (who advised that Rodenhurst was
receiving all prescribed medication) and Unit Manager John
Keesling (who advised that consent moves were generally not
permitted and that Rodenhurst was raising a classification
issue). (Id., Ex. 2, Juan Valenzuela Aff. ¶ 26.)  According to
Grievance Officer Valenzuela, Defendant Keesling also "indicated
that if there was a genuine medical need, a move could be made."
(Id.)

    Grievance Officer Valenzuela states that during a
September 8, 2007, meeting with Rodenhurst, he confirmed that

Rodenhurst was receiving the correct medication, that his housing assignment was a classification issue, that a classification issue "was not grievable under policy 14-5 and that the appropriate administrative remedy was under the facility classification policy."  (Id.)

Grievance Officer Valenzuela notes that "[a]lthough a classification issue . . . [Rodenhurst] moved into the Faith-Based Program, in Mike Unit on September 27, 2008, where he was briefly housed with Inmate Villegas, who was also a member of the Faith-Based Program."  (CCA Defs.' Mot. to Dismiss, Ex. 2, Juan Valenzuela Aff. ¶ 26 n.1.)  "As Inmate Rodenhurst was in Mike Unit at the time of his alleged removal by Assistant Warden Bradley, his removal from Mike Unit and the special programming offered there is not a classification issue and is grievable under policy 14-5."  (Id.)  It appears that Grievance Officer Valenzuela incorrectly noted the year as 2008, when, according to the Complaint, Rodenhurst was housed with Inmate Villegas in the Mike Unit on September 27, 2007.  (Compl. ¶ 125.)  At the hearing, CCA Defendants' counsel agreed that the affidavit was mistaken as to the year.

The Staff Response section of Informal Resolution No. 07-09-0004 states that no remedy was needed "due to his receiving his proper medication and his housing assignment per U/M Keesling."  (Id., Ex. 2, Att. F.)  The Informal Resolution Outcome section of the grievance was marked as resolved and was

29

signed by Rodenhurst on September 27, 2007. (<u>Id.</u>)  This was the very date that Rodenhurst was temporarily housed with Inmate Villegas in the Mike Unit of the Faith-Based Program.  (CCA Defs.' Mot. to Dismiss, Ex. 2, Juan Valenzuela Aff. ¶ 26 n.1; Compl. ¶ 125.)  This means that the relief Rodenhurst sought in Informal Resolution No. 07-09-0004 was granted in full.

It makes no sense to have expected Rodenhurst to further exhaust a matter on which he prevailed.  <u>See</u> <u>Brown</u>, 422 F.3d at 935; <u>Brady</u>, 196 F. Supp. 2d at 1021-22; <u>Clement</u>, 220 F. Supp. 2d at 1106; <u>Gomez</u>, 177 F. Supp. 2d at 985.  Accordingly, the court declines to dismiss Rodenhurst's claim against SCC for its alleged failure to provide a housing assignment with Inmate Villegas as unexhausted.  This court does not address other issues regarding the housing assignment, which will presumably be discussed by the parties in future filings.

Rodenhurst was housed with Inmate Villegas until October 18, 2007. (Compl. ¶ 125.)  Defendants argue that, to exhaust this claim, Rodenhurst had to file another grievance when he was separated from Inmate Villegas in October 2007 "as it was a new issue." (Defs.' Reply in Supp. Mot. to Dismiss, at 9.)  On the present record, CCA Defendants do not establish this.  It may indeed be so, but they do not meet their burden of showing that.

## III.  <u>CONCLUSION</u>

Rodenhurst's claims against the State of Hawaii are dismissed.  Rodenhurst's damage claims against the individual

Hawaii Defendants in their official capacities are also dismissed.  This order does not affect claims for prospective injunctive relief to the extent such claims are asserted, or claims against the individual Hawaii Defendants in their individual capacities.

The motion to dismiss is denied to the extent it is based on Rodenhurst's alleged failure to exhaust his claim against DCF pertaining to the distribution of his medication and his claim against DCF regarding his medically prescribed diet. The motion with respect to SCC is similarly denied because (1) it is unclear at this stage of the litigation whether administrative remedies were actually available to Rodenhurst, and (2) CCA Defendants do not establish a failure to exhaust claims concerning SCC's alleged failure to properly dispense medication, to distribute the correct medication, to provide a medically prescribed diet, to follow Rodenhurst's medical treatment plan, and to provide housing with Inmate Villegas.

IT IS HEREBY ORDERED that:

1.  The court *sua sponte* DISMISSES the State of Hawaii and DISMISSES damage claims against the individual Hawaii Defendants in their official capacities.

2.  CCA Defendants' Motion to Dismiss For Failure to Comply with the Prisoner Litigation Reform Act is DENIED.

31

This Order also disposes of State Defendants' joinder, as well as the joinder by Defendants Archuleta and Phan.

IT IS SO ORDERED.


DATED: Honolulu, Hawaii, July 30, 2009.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge


*Rodenhurst v. State of Hawaii, et al.,* Civ. No. 08-00396 SOM-LEK
SOM-LEK; ORDER DISMISSING CLAIMS AGAINST STATE OF HAWAII &
DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST
ADMINISTRATIVE REMEDIES; PROSE ATTNYS/Non-Disp
Orders/KAM/2009/Rodenhurst 08-396 SOM-LEK (deny mot. to dismiss)